U.S. BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

United States Courts
Southern District of Texas
FILED

OCT 0 6 2003

Michael N. Milby, Clerk,

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. **97-50165** |
| | ) | |
| **Fine Organics Corporation**, | ) | MOTION FOR PAYMENT |
| | ) | OF UNCLAIMED FUNDS |
| Debtor(s). | ) | |
| | ) | |

Comes now the claimant, Fine Organics Corporation, by and through their attorney-in-fact, Washington Research Trust, and moves this Court to order the withdrawal of moneys on the deposit for this estate in the name of Fine Organics Corporation, creditor, and to order the payment of these moneys to claimant, and in support of this motion states that the following statements and information are true and correct:

1.   There having been a dividend check in the amount of $11,019.52 in the above named case issued ·· Fine Organics Corporation, and said check not having been cashed by said payee, the Trustee, per 11 U.S.C. Section 347(a), delivered the unclaimed money to the Clerk, U.S. Bankruptcy Court.

2.   A brief history of the creditor is as follows:

The Trustees Report lists: 12941 I-45N., Suite 606 Houston, TX.  77057 is the old

Address. All linking documents are shown under Exhibit A.

Current address is on line 3.


3.   The following is the creditor's current address and phone number:
Fine Organics Corporation
Attn:  Phil Townsend, CEO & Chairman of the Board
6414 Fawnwood Drive
Spring, TX 77389
(281) 873-8733

4.   Washington Research Trust has been appointed by Fine Organics Corporation as lawful Attorney-in-Fact who is duly authorized by the attached original Power of Attorney to file this Motion.

5.  Claimant has made sufficient inquiry and has no knowledge that this claim has been previously paid, that any other application is currently pending before this court or that any party other than claimant is entitled to submit an application for this claim.

6.  Notice is hereby given to the court that on ___9 30-03___ the following were advised, via U.S. Postal Service, of the intent of Washington Research Trust to apply for the release of unclaimed funds in the above named case on behalf of Fine Organics Corporation, whose Tax ID# is 76-0445819:

> United States Attorney
> PO Box 611209
> Houston, TX 77002
>
> Hector Duran
> United States Trustee's Office
> 515 Rusk, Suite 3516
> Houston, TX 77002

7.  I understand that, pursuant to 18 U.S.C. Section 152, I shall be fined not more than $5,000.00 or imprisoned not more than five years, or both, if I have knowingly and fraudulently made any false statements in this document.

Wherefore, the claimant prays for an order requiring the Clerk of Court to pay this unclaimed money to the order of Fine Organics Corporation in care of Washington Research Trust, attorney-in-fact, for Fine Organics Corporation at the following address:

> Jean Wallace
> Jean Wallace, General Manager
> Washington Research Trust, Attorney-In-Fact for
> Fine Organics Corporation
> PO Box 463
> Redmond, WA 98073-0463
> 425-861-0355

State of Washington    )
County of King      )

On __9/30/03__ before me, personally appeared Jean Wallace, General Manager, Washington Research Trust personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities and that by their signature on the instrument the person, or the entity upon behalf of which the person acted executed the instrument.
WITNESS my hand and official seal:

NOTARY PUBLIC in and for the State of Washington,

DILLARA M. WALLACE
COMMISSION EXPIRES
NOTARY
PUBLIC
10-15-06
STATE OF WASHINGTON

Residing in King County
My commission expires: 10/15/...

_____

If you want a hearing, you must request one in writing, and you must respond specifically to each paragraph of this pleading. You must file your response with the Clerk of the Bankruptcy Court within twenty days from the date you were served and give a copy to the person who sent you the notice; otherwise, the Court may treat the pleading as unopposed and grant this relief.

If a party requests emergency consideration, the Court may act expeditiously on the matter. If the court shows a shorter response time than twenty days, you must respond within that time. If the court sets an emergency hearing before the response time will expire, only attendance at the hearing is necessary to preserve your rights.

If an emergency hearing is not set, you must respond before the response time expires.

## LIMITED POWER OF ATTORNEY
## LIMITED TO ONE TRANSACTION ONLY

Fine Organics Corporation appoints Washington Research Trust, as its lawful attorney in fact to recover, receive, or obtain information pertaining to the claim of Fine Organics Corporation in the amount of $11,019.52 held by a governmental entity.

Washington Research Trust, as attorney in fact, may not make any expenditure or incur any costs on behalf of Fine Organics Corporation.

This Limited Power of Attorney revokes all previous powers of attorney granted for the purpose of recovering or obtaining information pertaining to the claim of Fine Organics Corporation in the amount of $11,019.52.

Fine Organics Corporation

By: _____    TIN 76-0445819

Phil Townsend
CEO & Chairman of the Board

*Affix Corporate Seal Here*
*Or if Corporate Seal Unavailable Sign Affidavit Below:*

*Staple Signatory's Business Card Here*

BE IT ACKNOWLEDGED, that the undersigned hereby says under oath that the corporate seal for is presently unavailable to the undersigned

BY: _____

Phil Townsend, CEO & Chairman of the Board

State of __Texas__

County of __Harris__

Before me Phil Townsend, personally appeared and acknowledged to me that she is the person whose name is subscribed within the instrument and acknowledged that the execution thereof to be her free act.

Signature: __Marlies Rasberry__

My Commission Expires __November 9, 2006__    Notary Seal



MARLIES RASBERRY
MY COMMISSION EXPIRES
November 9, 2006

VIP SERVICES

2012 Louisiana St.
Houston, Texas 77002

1-800-596-XXXX
Fax 713-659-3797
Website: www.vippassports.com
Email: info@vippassports.com

PASSPORT

United States
of America

The Secretary of State of the United States of America
hereby requests all whom it may concern to permit the citizen/national
of the United States named herein to pass without delay or hindrance
and in case of need to give all lawful aid and protection.

Le Secrétaire d'Etat des Etats-Unis d'Amérique
prie par les présentes toutes autorités compétentes de laisser passer le citoyen
ou ressortissant des Etats-Unis titulaire du présent passeport, sans délai ni
difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.

El Secretario de Estado de los Estados Unidos de América por el presente solicita a las
autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos
aquí nombrados sin demora ni dificultades, y en caso de necesidad, prestarle toda la
ayuda y protección lícitas.

SIGNATURE OF BEARER/SIGNATURE DU TITULAIRE/FIRMA DEL TITULAR

**NOT VALID UNTIL SIGNED**



PASSPORT
PASSEPORT
PASAPORTE

USA

UNITED STATES OF AMERICA

Type / Type / Tipo   Code / Code / Código   Passport No. / No. du Passeport / No. de Pasaporte
P                    USA                    206624201

Surname / Nom / Apellidos
TOWNSEND

Given names / Prénoms / Nombres
PHILLIP LYNN

Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA

Date of birth / Date de naissance / Fecha de nacimiento
09 Sep 1942

Sex / Sexe / Sexo   Place of birth / Lieu de naissance / Lugar de nacimiento
M                   INDIANA, U.S.A.

Date of issue / Date de délivrance / Fecha de expedición   Authority / Autorité / Autoridad
07 Jun 2002                                                National

Date of expiration / Date d'expiration / Fecha de caducidad   Passport Center
06 Jun 2012

Amendments / Modifications / Enmiendas
See Page 24

P<USATOWNSEND<<PHILLIP<LYNN<<<<<<<<<<<<<<<<<<
206624201USA4209096M1206061<<<<<<<<<<<<<<08



Entrées / Entradas / **VISAS** / Sorties / Salidas
Entrées / Entries
Departures

भारत गणराज्य REPUBLIC OF INDIA      K 100586

वीसा
**VISA**

उपनाम /Surname
**TOWNSEND**

भाग / Name
**PHILIP LYNN**

राष्ट्रीय /Type    जारी करने की तिथि /Date of Issue    समाप्ति की तिथि /Date of Expiry    प्रवेशों की संख्या /No. of Entries
**B**    **19/Sep/2003**    **18/Mar/2004**    **M**

विशेष पृष्ठांकन /Special Endorsement
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

पारपत्र संख्या /Passport No.
**206624201**

बच्चों की संख्या /No. of Children
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

पर्यटक वीसा अविस्तरण /Tourist Visa Non-Extendable.
प्रयोजन बदलने की अनुमति नहीं है /Change of Purpose Not Allowed.
180 दिन से अधिक के वीसाओं के लिए भारत में आगमन के 14 दिन के भीतर पंजीयन आवश्यक है /
Registration required within 14 days of arrival in India for visas valid for more than 180 days.
निषिद्ध, प्रतिबंधित एवं छावनी क्षेत्रों के लिए वैध नहीं /Not valid for prohibited, restricted and cantonment areas.



TEXAS
DEPARTMENT OF PUBLIC SAFETY
DRIVER LICENSE

CLASS: C        DL: 09013332
DOB: 09-09-42   HT: 6-01
EXPIRES: 09-09-05  EYES: BLU
REST:              SEX: M
END:

TOWNSEND, PHILLIP LYNN
6414 FAWNWOOD DR
SPRING TX 77389

# PURCHASE AND SALE AGREEMENT

STATE    OF    TEXAS    §
                         §
COUNTY OF CHAMBERS       §

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into this _7th_ day of August, 1995, by and between **RODMAN EGGEN**, a resident of Houston, Harris County, Texas (the "Seller"), and **FINE ORGANICS CORPORATION**, a Texas corporation with offices in Houston, Harris County, Texas (the "Purchaser").

## W I T N E S S E T H:

1.  **Purchase and Sale.**  For the consideration hereinafter set forth and subject to the terms, covenants and conditions herein contained, Seller hereby agrees to sell and convey, and Purchaser hereby agrees to purchase and to pay for, (a)  that certain tract of land (the "Land"), and other real property and property rights, being more particularly described on Exhibit "A" attached hereto, (b) all improvements, fixtures and other property, if any, owned by Seller situated on the Land and affixed thereto (hereinafter collectively called the "Improvements") and (c)  all and singular any rights and appurtenances of Seller pertaining to the Land and Improvements, including any right, title and interest of Seller (but without warranty whether statutory, express or implied), if any, in and to the oil, gas and other minerals that are in and under the Land, utility capacity, adjacent streets, alleys or rights-of-way and easements pertaining thereto (the "Land Rights"). The Land, the Improvements, and the Land Rights are hereinafter sometimes collectively called the "Property").  The Property is subject to the matters set forth and described in Exhibit "B" attached hereto (the "Permitted Exceptions" and the matters (herein described) to be set forth in the Special Warranty Deed (the "Deed"), in the form attached hereto as Exhibit "C", from Seller to Purchaser.

2.  **Purchase Price.**  The total purchase price (the "Purchase Price") to be paid by Purchaser to Seller for the Property shall be SEVEN HUNDRED ⟨FIFTY⟩ THOUSAND DOLLARS ($~~750,000.00~~ $750,000.00), which shall be payable to Seller at Closing (hereinafter defined) in the following manner:

> (a)   The sum of $39,000.00 (the "Cash Payment") shall be paid by Purchaser to Seller by Cashier's Check or other immediately available funds; and

      (b)   Purchaser's execution and delivery to Seller of its Promissory Note in the principal amount of $711,000.00 (the "Note"), together with a Deed of Trust (the "Mortgage") covering the Property to secure Purchaser's payment of the Note.  The Note and the Mortgage shall be in the forms of same attached hereto as Exhibit "D" and Exhibit "E", respectively.

    3.  **Earnest Money.**  It is contemplated that concurrently with the execution and delivery of this Agreement by Seller and Purchaser a copy of same will be delivered to Lawyer's Title Company of Houston (the "Title Company"), 617 Caroline, Houston, Texas  77002, and that the consummation of the transactions contemplated hereby will occur simultaneously therewith or promptly thereafter.  Accordingly, Seller has not required that any sums be placed on deposit with the Title Company at this time.  If for some reason the Closing has not occurred within five (5) business days of the execution and delivery of this Agreement and the parties desire that the terms of this Agreement not be terminated, Seller may require, and Purchaser shall deposit a reasonable sum (as designated by Seller) to secure the performance of Purchaser's obligations hereunder (the "Earnest Money") be placed on deposit with the Title Company.  If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied to the Cash Payment to be paid by Purchaser at the Closing.

    The Title Company agrees (or will agree upon execution of receipt set forth herein) to hold the Earnest Money in accordance with the terms of this Agreement.

    4.  **Representations of Seller.**  Seller represents to Purchaser that it has the full power and authority to execute this Agreement and that it has (or will have at Closing) the power and authority to consummate the transactions contemplated hereby.  This Agreement constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms.  Seller further represents that he is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986 (i.e., Seller is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate as those terms are defined in such Code and regulations promulgated thereunder).  Further, Seller represents to Purchaser that he has not received notice of any condemnation, administrative or similar proceedings or assessments affecting the Property, nor has Seller received notice that any such proceedings or assessments are contemplated by any person or entity.

    5.  **Representations of Purchaser.**  The execution and delivery by Purchaser of, and Purchaser's performance under, this Agreement, are within Purchaser's powers and have been duly authorized by all requisite corporate action, and the person executing this Agreement

on behalf of the Purchaser has the authority to do so.   This Agreement constitutes the legal, valid and binding obligation of Purchaser enforceable in accordance with its terms.

6.   **Survey.** Seller has furnished Purchaser with a copy of a survey of the Property (the "Survey"), dated December 4, 1984, prepared by Busch, Hutchison & Associates, Inc.

7.   **Owner's Title Policy Commitment.** Seller has furnished Purchaser with a copy of the Commitment for Title Insurance (the "Title Commitment") issued by the Title Company, dated June 20, 1995, showing title to the Property in its present status and committing to issue the owner's title policy to Purchaser called for under Paragraph 13(c) of this Agreement. Seller shall pay the basic premium for the standard Texas owner's title policy issued by the Title Company and Purchaser shall pay the cost of the any additional premium for the Mortgagee's Title Policy.

8.   **Conditions to Purchaser's Obligations.** As a condition precedent to Purchaser's obligations hereunder, all of the representations and warranties of Seller contained in Paragraph 4 of this Agreement shall be true at, and as of, the Closing in all respects unless otherwise disclosed in writing and approved by Purchaser.

9.   **Conditions to Seller's Obligations.** The following shall be conditions precedent to Seller's obligations hereunder:

(a)   All of the representations and warranties of Purchaser contained in Paragraph 5 of this Agreement shall be true at, and as of, the Closing in all respects unless otherwise disclosed in writing and approved by Seller.

(b)   Purchaser shall have performed, observed and complied with all covenants, agreements and conditions required by this Agreement to be performed, observed and complied with by Purchaser prior to, or as of the Closing.

(c)   Purchaser shall not, as of the Closing, be in receivership or dissolution, or have made any assignment for the benefit of creditors, or admitted in writing its inability to pay its debts as they mature, or have been adjudicated a bankrupt, or have filed a petition in voluntary bankruptcy, a petition or answer seeking reorganization or an arrangement with creditors under the federal bankruptcy law, or any other similar law or statute of the United States or any state, and no such petition shall have been filed against Purchaser.

If any of the conditions stated above have not been complied with by Purchaser within any applicable time period, Seller in addition

3

to having the right to terminate this Agreement, shall be entitled
to the Earnest Money.

10.    **Disclaimer.**  NOTWITHSTANDING ANYTHING TO THE CONTRARY
CONTAINED IN THIS AGREEMENT, IT IS UNDERSTOOD AND AGREED THAT NO
REPRESENTATIONS OR WARRANTIES ARE MADE, OR RESPONSIBILITY ASSUMED
BY SELLER AS TO THE PRESENT OR FUTURE CONDITION OR FITNESS OF THE
PROPERTY FOR DEVELOPMENT OR ANY OTHER PURPOSE.  NO REPRESENTATIONS
OR WARRANTIES ARE MADE BY SELLER IN RESPECT OF THE PROPERTY
CONCERNING, OR CONCERNING THE EFFECT OF, ANY PRESENT OR FUTURE
LAWS, ORDINANCES, REGULATIONS, RESTRICTIONS OR ORDERS BY ANY
FEDERAL, STATE, COUNTY OR MUNICIPAL GOVERNMENT OR ANY PUBLIC
AUTHORITY; NOR ARE ANY REPRESENTATIONS MADE OR RESPONSIBILITY
ASSUMED BY SELLER, EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, AS
TO ANY OTHER MATTER OR THING.   THE TERMS AND CONDITIONS OF THIS
PARAGRAPH SHALL EXPRESSLY SURVIVE THE CLOSING AND NOT MERGE THEREIN
AND SHALL BE INCORPORATED INTO THE DEED.

11.  **Environmental Matters.**  Seller has received no notice nor
has any knowledge that (i) the Property is not in compliance with
any statute, regulation, rule or ordinance affecting the same,
including any statute, regulation, rule or ordinance regarding
solid waste, as defined in the U. S. Environmental Protection
Agency Regulations at 40 C.F.R., Part 261, or (ii) there has been
a disposal or existence, in or on the Property, of any hazardous
substance, as defined by the Comprehensive Environmental Response
Compensation and Liability Act of 1980, as amended, and regulations
promulgated thereunder.

13.  **The Closing.**  The consummation of the transactions con-
templated hereby (the "Closing") shall take place at the offices of
the Title Company at 10:00 a.m. Houston Time on August 7th, 1995
(the "Closing Date").  At the Closing:

(a)   Seller shall:

    (i)    deliver to Purchaser a duly executed and
acknowledged Deed;

    (ii) deliver to the Title Company and Purchaser a
"non-foreign affidavit" acknowledging that Seller is not
a "foreign person" within the meaning of Section 1445 of
the Internal Revenue Code of 1986 in the form attached
hereto as Exhibit "F";

    (iii) deliver to the Title Company and Purchaser tax
certificates covering the Property for the year 1994,
certifying that all ad valorem taxes assessed against
the Property have been paid; and

4

(iv)  execute and deliver to the appropriate party such other notices and documents that may be reasonably required by the Title Company.

(b)  Purchaser shall:

(i)  pay to Seller the Cash Payment and deliver the duly executed Note and duly executed and acknowledged Mortgage;

(ii) deliver to Seller, in form satisfactory to Seller, a corporate resolution authorizing this transaction and an incumbency certificate with respect to the person/officer(s) executing this Agreement and the other documents to be delivered by Purchaser; and

(iii)  execute and deliver to the appropriate party such other notices and documents that may be reasonably required by the Title Company.

(c)  The Title Company shall:

(i)  deliver to Purchaser, at Seller's expense, an owner's title policy issued by the Title Company in the amount of the Purchase Price insuring that Purchaser owns fee simple title to the Property pursuant to the Title Commitment.  At Purchaser's option, the standard printed exception for "any discrepancies, conflicts or shortages in area or boundary lines or any encroachments, or any overlapping of improvements" shall be deleted (except for "shortages in area" and any matter revealed by the Survey), with the cost of any such deletion being paid by Purchaser; and

(ii) deliver to Seller a Mortgagee's Title Policy of Insurance insuring the lien of the Mortgage as a first and prior lien against the Property pursuant to the Title Commitment.

Ad valorem taxes on the Property shall be prorated between Seller and Purchaser based on the ad valorem taxes assessed against the Property for 1994.  Seller and Purchaser shall execute an agreement with respect to the ad valorem taxes as supplied by the Title Company.  The present insurance coverage on the Property, if any shall be terminated as of the Closing Date, and there shall be no proration of insurance premiums.  Additionally, all public utility service in Seller's name, if any, shall be terminated as of the Closing Date, and there shall be no proration of the public utility bills.  Any escrow fee charged by the Title Company shall be borne equally by the Seller and Purchaser.  Purchaser shall pay the recording fees for recordation of the Deed, and the Mortgage. Purchaser and Seller shall deliver to the other party such

documentary and other evidence as may be reasonably required by the Title Company evidencing the status and capacity of such party and the authority of the person or persons who are executing the various documents on its behalf in connection with this Agreement and the consummation of the transactions contemplated hereby.

14.  **Ad Valorem Tax Rollback.**  It is acknowledged by Purchaser that the Property has been assessed for ad valorem tax purposes as "land designated for agricultural use" or as "qualified open-space land" pursuant to The Texas Constitution and the Texas Property Tax Code for years prior to and including the year of Closing, and it is expressly understood that except for that portion or portions of the Property for which Seller has voluntarily or involuntarily (by action or inaction) caused such portion or portions to lose any such designation, Purchaser shall be liable for any subsequent assessments for the year of Closing and prior years due to a change in ownership or a change in use, or both,  The obligations of Seller and Purchaser as set forth in this Paragraph 14 shall expressly survive the Closing.

15.  **Notice.**  Any notice or communication required or per- mitted hereunder shall be given in writing, sent by (a) personal delivery, or (b) expedited delivery service by a national overnight courier service with proof of delivery, or (c) United States mail, postage prepaid, registered or certified mail, return receipt requested, addressed as follows:

If to Seller, to:

Rodman Eggen
3444 Meadowlake
Houston, Texas  77027
Telephone No.: (713)  622-9075
Telecopier No.: (713)  622-9075

with a copy to:

MaDonna Hendrick
One West Loop South, Suite 690
Houston, Texas  77027
Telephone No.:  (713)  621-9816
Telecopier No.: (713)  621-6132

If to Purchaser, to:

Fine Organics Corporation
12941 I-45 N, Suite 707
Houston, Texas  77060
Attn:  Phillip L. Townsend, V.P.
Telephone No.:  (713)  872-3011
Telecopier No.: (713)  875-1915

with a copy to:

Gary Aguren
Aguren & Schorr, P.C.
333 North Belt, Suite 1230
Houston, Texas  77060
Telephone No.:  (713)  445-0024
Telecopier No.: (713)  445-3101

6

or to such other address or to the attention of such other person
as hereafter shall be designated in writing by the applicable party
sent in accordance herewith.   Any such notice or communication
shall be deemed to have been given either at the time of personal
delivery or, in the case of delivery service or mail, as of the
first attempted delivery at the address and in the manner provided
herein.

16.   **Brokers.**  Each party hereto represents to the other that,
it has not authorized any broker or finder to act on its behalf in
connection with the sale and purchase hereunder and that such party
has not dealt with any broker or finder purporting to act on behalf
of any other party.  Each party hereto agrees to indemnify, defend
and hold harmless the other party from and against any and all
losses, liens, claims, judgments, liabilities, costs, expenses or
damages (including attorneys' fees and court costs) of any kind
alleged to have been made out of or resulting from any agreement,
arrangement or understanding alleged to have been made by such
party or on its behalf with any broker or finder in connection with
this Agreement or the transactions contemplated hereby.  Notwith-
standing anything to the contrary contained herein, this paragraph
shall survive the Closing or any termination of this Agreement.

17.   **Assignment.**  Purchaser may not assign its interest in
this Agreement to any party.

18.   **Attorneys' Fees and Legal Expenses.**  Should either party
hereto institute any action or proceeding in court to enforce any
provision hereof or for damages by reason of any alleged breach of
any provision of this Agreement or for any other judicial remedy,
the prevailing party shall be entitled to receive from the losing
party reasonable attorneys' fees and court costs incurred
connection with said proceeding.

19.   **Paragraph Headings.**  The paragraph headings contained in
this Agreement are for convenience only and shall in no way enlarge
or limit the scope or the meaning of the various and several
paragraphs hereof.

20.   **Entire Agreement.**  This Agreement embodies the entire
agreement among the parties hereto and supersedes any prior
understandings or written or oral agreements among the parties
concerning the Property.  Further, this Agreement cannot be varied,
modified, amended or altered except by the written agreement of the
parties.

21.   **Applicability.**  The terms and provisions of this
Agreement shall be binding upon and inure to the benefit of the
parties hereto and their respective permitted successors and
assigns, except as expressly set forth herein.

22.   **Time.**   Time is of the essence in the performance of Purchaser's obligations under this Agreement.

23.   **Gender and Number.**   Within this Agreement, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires.

24.   **Compliance with Reporting of Foreign Investment Requirements.**   Seller and Purchaser agree to comply with any and all reporting requirements applicable to the transaction which is the subject of this Agreement which are set forth in any law, statute, ordinance, rule, regulation, order or determination of any governmental authority, including but not limited to The International Investment Survey Act of 1976, The Agricultural Foreign Investment Disclosure Act of 1978, The Foreign Investment in Real Property Tax Act of 1980 and the Internal Revenue Code and further agree upon request of one party to furnish the other party with evidence of such compliance.

25.   **Exhibits.**   All exhibits described herein and attached hereto are fully incorporated into this Agreement by this reference for all purposes.

26.   **Execution.**   This Agreement is executed in multiple counterparts, each of which shall be deemed to be an original.

27.   **Applicable Law.**   **THIS AGREEMENT SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND SHALL BE PERFORMABLE IN HARRIS COUNTY, TEXAS.**

28.   **No Recording.**   This Agreement shall not be recorded by Purchaser for any reason whatsoever and an attempt to do so shall render the Purchaser liable to Seller for any damages allowable at law or in equity on account of such breach.

29.   **Expiration.**   The execution of this Agreement by Purchaser and the delivery hereof to Seller shall constitute an offer which shall be automatically revoked, delivering one fully executed copy thereof to Purchaser, prior  to 5:00 p.m. Houston Time on the ____ day of August, 1995.

30.   **Effective Date.**   The "Effective Date" of this Agreement shall be the date on which the Title Company acknowledges receipt of a fully executed counterpart of this Agreement.

IN WITNESS WHEREOF, this Agreement is executed in multiple counterparts by Seller and Purchaser as of the date first above written.

"SELLER"

RODMAN EGGEN

"PURCHASER"

FINE ORGANICS CORPORATION, a Texas corporation

By: _____
    Name: Phillip L. Townsend
    Title: Vice President

List of Exhibits:

Exhibit "A"    Description of Land
Exhibit "B"    Permitted Exceptions
Exhibit "C"    Form of Special Warranty Deed
Exhibit "D"    Form of Note
Exhibit "E"    Form of Mortgage
Exhibit "F"    Non Foreign Affidavit


RECEIPT BY TITLE COMPANY

An original fully executed copy of this Agreement has been received by the Title Company this the 5 day of August, 1995, and by the execution hereof the Title Company hereby covenants and agrees to be bound by the terms of this Agreement.

LAWYERS TITLE COMPANY OF HOUSTON

By: _____
    Name: J. PUTNAM
    Title: PRESIDENT

eggcon

9

# PORTER & HEDGES, L.L.P.

**ATTORNEYS AT LAW**
700 LOUISIANA, 35TH FLOOR
**HOUSTON, TEXAS 77002-2764**

**DANIEL F. PATCHIN**

Tel. Direct  (713) 226-0687
Fax Direct  (713) 226-0287
DFPATCHIN@PORTERHEDGES.COM

TELECOPIER (713) 228-1331
TELEPHONE (713) 226-0600

MAILING ADDRESS:
P.O. BOX 4744
HOUSTON, TX 77210-4744

August 12, 1999

*PRIVILEGED COMMUNICATION*
*ATTORNEY-CLIENT PRIVILEGE*
*WORK PRODUCT PRIVILEGE*

*Via First Class Mail*

Phil Townsend
Phillip Townsend Associates, Inc.
P.O. Box 90327
Houston, Texas 77290

Re:   *In re Fine Organics Corporation*, Case No. 97-50165, United States Bankruptcy
Court, Southern District of Texas, Houston Division

Dear Phil:

Enclosed for your records is an executed copy of the release in connection with the
compromise between yourself, PTAI and the bankruptcy estate in the above-referenced case.

Best regards,

Daniel F. Patchin

DFP:pkb
Enclosure

::ODMA\PCDOCS\DOCS\279588\1

## SETTLEMENT AND RELEASE AGREEMENT

**THIS SETTLEMENT AND RELEASE AGREEMENT** is entered into by and between (i) Phillip Townsend (**"Townsend"**) and Phillip Townsend Associates, Inc. (**"PTAI"**) and (ii) Rodney Tow (**"Trustee"**), as trustee of the Chapter 7 bankruptcy estate (the **"Bankruptcy Estate"**) in that certain bankruptcy case styled *In re Fine Organics Corporation*, Case No. 97-50165, United States Bankruptcy Court, Southern District of Texas, Houston Division (the **"Bankruptcy Case"**), effective as of August 3, 1999.  Collectively, Townsend, PTAI, and the Trustee are the **"Parties."**

### W I T N E S S E T H :

WHEREAS the Trustee is the duly-appointed trustee of Fine Organics Corporation (**"Debtor"**), the debtor in the Bankruptcy Case; and

WHEREAS during the Bankruptcy Case PTAI advanced certain funds to the Bankruptcy Estate to enable the Bankruptcy Estate to pay expenses to preserve and protect assets of the Bankruptcy Estate, in particular, the real property and plant of Debtor; and

WHEREAS the Trustee filed his "Complaint to Determine Extent and Validity of Liens, to Avoid Preferential and Fraudulent Transfers; Objection to Claims," instituting Adversary Proceeding No. 98-3488 (the **"Adversary Complaint"**), wherein PTAI was named as a defendant; and

WHEREAS PTAI has asserted an administrative claim (**"PTAI Administrative Claim"**) in excess of $100,000 in the Bankruptcy Case on account of such advances; and

WHEREAS the Trustee contends that the Bankruptcy Estate may have certain avoidance and/or recovery claims against PTAI and/or Townsend, including, but not limited to, those set forth in the Adversary Complaint and any relating to payments received by PTAI within the year prior to the filing of this Bankruptcy Case; and

WHEREAS PTAI and Townsend deny the existence of such claims and/or contend that there are valid defenses to such claims and have provided evidence to the Trustee, including the Affidavit of Townsend (the **"Townsend Affidavit"**) in support of those defenses; and

WHEREAS the Trustee has relied on the Townsend Affidavit and evidence presented by Townsend and/or PTAI; and

WHEREAS Townsend, PTAI, and the Trustee have agreed to settle and compromise all issues pertaining to the PTAI Administrative Claim and the above-referenced claims by the Trustee against PTAI and/or Townsend by reducing the amount of the PTAI Administrative Claim to $84,000; and

WHEREAS the Trustee has filed a motion in the Bankruptcy Case describing the compromise and seeking Bankruptcy Court approval of the compromise; and

WHEREAS the Bankruptcy Court presiding over the Bankruptcy Case has issued an order approving said compromise and authorizing and directing the Trustee to perform his obligations under the compromise (the **"Compromise Order"**); and

WHEREAS the compromise contemplates the consummation of the compromise, including, but not limited to, the execution of this Agreement by and between Townsend, PTAI, and the Trustee.

**NOW, THEREFORE,** in consideration of the foregoing premises and of the mutual promises contained herein, and for other good and valuable consideration, the adequacy of which is hereby stipulated by the Parties, the Parties agree as follows:

1.  The Trustee, his respective attorneys, agents, representatives, successors, and assigns hereby release Townsend and PTAI and their respective shareholders, subsidiaries, attorneys, officers, directors, representatives, employees, agents, successors, and assigns, as applicable, from any and all avoidance and recovery claims that have been or could have been brought in this Bankruptcy Case (including, but not limited to, any claims for recovery of avoidable transfers or obligations arising under the Bankruptcy Code or applicable State law), save and except for the Trustee's claim against PTAI for avoidance of a lien asserted by PTAI against the inventory of the Debtor, which claim has been asserted by the Trustee in that certain adversary proceeding in the Bankruptcy Case styled *Rodney Tow, Trustee v. Rodman Eggen et al.*, Adversary no. 98-3488, and which claim is not released or discharged through this instrument.

2.  Townsend and PTAI, their respective attorneys, agents, representatives, successors, and assigns hereby release the Bankruptcy Estate, its attorneys, representatives, employees, agents, successors, and assigns from any and all liabilities and claims, disputes, demands, motions, actions, liens, or causes of action of any type or kind, whether direct or consequential, liquidated or unliquidated, known or unknown, presently existing or which may arise hereafter, save and except for: (i) the PTAI Administrative Claim in the amount of $84,000 and (ii) any claims referenced in proofs of claim filed by Townsend or PTAI in the Bankruptcy Case, which claims are not released or discharged through this instrument.

3.  PTAI acknowledges that its lien against any of the assets of the Bankruptcy Estate is void, except as to its right to surcharge the West Bay Organics sales proceeds for the administrative expense allowed Townsend and/or PTAI through the Compromise Order pursuant to § 506(c).

4.  The Trustee shall pay the $84,000 allowed as an administrative expense in the Compromise Order out of the West Bay Organics sales proceeds.

5.  This Settlement and Release Agreement shall be binding upon and shall inure to the benefit of Townsend, PTAI, the Trustee, and the Bankruptcy Estate and their respective affiliated companies, subsidiaries, attorneys, shareholders, officers, directors, employees, agents, representatives, successors, heirs, and assigns, as applicable.

6.  The Trustee, PTAI, and Townsend represent and warrant that an attorney or officer thereof has read, understands, and agrees to each and all of the terms of this document which he or it enters into freely, voluntarily, of his or its own accord, and without any duress, coercion, or threat whatsoever; that he or it has been represented by counsel and has had the opportunity to consult with counsel in connection with the approval and execution of this Release Agreement and to be bound hereto.

7.  This Settlement and Release Agreement shall be governed in all respect by the laws of the State of Texas, without regard to the conflict of law doctrines of particular jurisdictions.

**IN WITNESS WHEREOF,** Townsend, PTAI, and the Trustee have signed and acknowledged this Settlement and Release Agreement as of the date shown beneath their signatures.

**PHILLIP TOWNSEND**

Date: _____, 1999

**PHILLIP TOWNSEND ASSOCIATES, INC.**

By: _____
Phillip Townsend, President

Date: _____, 1999

**RODNEY D. TOW, AS TRUSTEE OF THE CHAPTER 7 BANKRUPTCY ESTATE ADMINISTERED IN *IN RE FINE ORGANICS CORPORATION*, CASE NO. 97-50165, UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

Date: _____, 1999



**FINE ORGANICS CORPORATION**
12941 I-45 North • Suite 707
Houston, TX 77060
Fax: (713) 875-1915
Phone: (713) 873-8733

# AGREEMENT

This agreement was made on the 23rd day of January, 1997 between Fine Organics Corporation, a Texas corporation, having its principal place of business at 6655 West Bay Road, Baytown, Texas 77520 (hereinafter referred as FINE)

and

CHUSEI (U.S.A.) Inc., a Texas corporation, having its principal place of business at 12500 Bay Area Boulevard, Pasadena, Texas 77505 (hereinafter referred as CHUSEI),

## WITNESSETH

Whereas, FINE wishes to receive certain services from CHUSEI to promote marketing its products and services in the Asian market;

Whereas, CHUSEI is willing to render such services to FINE;

Now, therefore, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree as follows:

Article 1.          Scope of Services

CHUSEI will actively promote the sales of FINE's products to the Asian market. To do this, CHUSEI will need to (1) identify and establish contact with the companies; (2) identify individuals within each company who are responsible for procurement of the products; (3) meet, or converse electronically, with said individuals; and pursue sales. CHUSEI is expected to keep FINE informed of all sales actively performed by CHUSEI on FINE's behalf.

Article 2.          Appointment of Individual

CHUSEI agrees to appoint Eiichi (Eddie) Kobayashi to perform the work.

Article 3.          Compensation

FINE shall pay CHUSEI U.S.$3,000.00 per month as compensation for the services. The amount of the compensation is based upon the assumption that the time required to perform the work is approximately 30% of the appointed

individual's total work time. Should the actual time of work deviate considerably from 30%, then the amount of compensation shall be adjusted accordingly.

Article 4.    Expenses

All the expenses, directly attributable to services performed for FINE, such as (1) telephone, (2) fax charges, and (3) travel expenses shall be paid by FINE. FINE will provide secretarial and office support as required by Mr. Kobayashi. Any large item expenses must be pre-approved by FINE.

Article 5.    Exclusivity

It is understood between the parties (1) that CHUSEI is neither an agent of FINE nor a buyer or seller of FINE's products. (2) FINE exclusively retains the responsibility and authority over all product sales and (3) FINE, at its sole discretion and for any reason whatsoever may refuse or discontinue product sales to any customer, including these conducted by CHUSEI.

Article 6.    Terms of the Agreement

This agreement is in force for a period of (1) one year from the date of signing and shall be automatically extended for one other year provided neither party expresses, in writing within 3 months prior to its expiration, its will to terminate the contract.

This agreement automatically expires, even within its validity term, in such case where the appointed individual (Eiichi Kobayashi) becomes unable to perform the work for any reason. Either party may cancel the agreement within 30 days written notice.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate signed by their authorized officers on the day and year first above written.

Fine Organics Corporation

By:

CHUSEI (U.S.A.) Inc.

By:

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

TX-10(Rev'd 10/96)

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

MAY 1 1 2001

Michael N. Milby, Clerk

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 97-50165-H4-7 |
| FINE ORGANICS CORPORATION | § | |
| | § | |
| | § | |
| | § | |

### ORDER

CAME ON FOR CONSIDERATION, Trustee's Motion to Pay Funds into the Court Registry under 11 U.S.C. §347(a), and the Court, having considered the Motion, is of the opinion that the Motion is well taken and the Court further finding that notice of said Motion is not required, it is therefore,

ORDERED that Rodney Tow, Trustee is authorized to pay the funds in the amount of $11,019.52, now held by him in the above styled and numbered case, together with any accrued interest thereon, into the registry of the Court.

SIGNED this the ___10th___ day of ___May___ 2001.

~~U.S. BANKRUPTCY JUDGE~~

s signed for the Court by
er authority of 28 U.S.C.
eral Order 2000-3.
IEL N. MILBY, CLERK

Deputy Clerk

279